AIR FLORIDA, INC., Plaintiff,

v.

NATIONAL MEDIATION BOARD, Its Chairman Robert J. Brown, Member Robert O. Harris, individually and collectively as its members, and its Executive Secretary, Rowland K. Quinn, Jr.; Air Line Employees Association, the International Association of Machinists and Aerospace Workers, AFL–CIO; the Negotiating Committee of the Airport and Ramp Service Agents of Air Florida, Inc., through its Chairman, Timothy P. O'Brien, Acting on Behalf of a Class or Craft as described in more particularity herein, Defendants.

No. 81–1932–Civ–SMA.

United States District Court,
S. D. Florida,
Miami Division.

Omnibus Order Jan. 19, 1982.
Opinion Feb. 12, 1982.

See also D.C., 534 F.Supp. 17.

Joseph Z. Fleming, Fleming & Huck, Miami, Fla., for Air Florida, Inc.

Barbara Ward, U. S. Dept. of Justice, Washington, D. C., for the Federal Defendants; Ronald M. Etters, National Mediation Bd., Washington, D. C., of counsel.

Wyatt Johnson, Senior Vice President and Gen. Counsel, Air Line Emp. Ass'n., Intern., Chicago, Ill., George H. Tucker, Manners, Amoon, Whatley & Tucker, Miami Springs, Fla., for Intern. Ass'n of Machinists and Aerospace Workers, AFL–CIO.

Joseph P. Manners, Gen. Counsel IAMAW, Washington, D. C., John-Edward Alley, Alley & Alley, Tampa, Fla., for the Negotiating Committee of the Airport and Ramp Service Agents. of Air Florida, Inc.

## OMNIBUS ORDER

ARONOVITZ, District Judge.

These two causes came before the Court upon the several pending motions of the parties. Both causes of action arise from the May, 1981 Air Line Employees' Association's (hereinafter "ALEA") application pursuant to Section 2, Ninth, of the Railway Labor Act, as amended, 45 U.S.C. § 152, Ninth, for investigation of a representational dispute involving employees of Air Florida, Inc. Subsequent to the ALEA application, The International Association of Machinists and Aerospace Workers, AFL–CIO (hereinafter "IAM"), filed an application to intervene in the dispute. Pursuant to Section 2, Ninth, the National Mediation Board (hereinafter "the Board"), conducted an investigation of the dispute, the scope and form of which is the subject of this dispute, and in order to conduct an employee election, on August 24, 1981, the Board required Air Florida to provide, not later than August 31st, an alphabetical set of employee addresses.

On August 31, 1981, rather than submit the requested employee lists, Air Florida filed suit in Case No. 81–1932–Civ–SMA,* seeking declaratory, injunctive and equitable relief. Air Florida's Complaint alleges violation of the Board's statutory duty to investigate pursuant to Section 2, Ninth, and violation of the Government in the Sunshine Law, 5 U.S.C. § 552b at § 557(d)(1)(D). Named as Defendants in the suit are the Board and its members, ALEA, IAM and the Negotiating Committee, an employee group who had agreements with Air Florida concerning certain employees. The Board, ALEA and IAM filed Motions to Dismiss the Complaint alleging lack of subject matter jurisdiction, want of ripeness and lack of standing to judicially review the Board's actions, and alleging that the Complaint fails to state a claim under the Government in the Sunshine Act. The Negotiating Committee filed an Answer, Cross-claim and Counterclaim against the Board, ALEA, IAM and Air Florida. Thereafter, the Board, ALEA and IAM filed Motions to Dismiss the Cross-claim for the same reasons asserted in their Motions to Dismiss the Complaint of Air

---

* Case No. 81–1932–Civ–SMA originally fell in the division of Judge Alcee Hastings and remained there until transferred to the undersigned Judge by the Chief Judge of this District on December 21, 1981.

Florida. Air Florida answered the Counterclaim and also filed Motions for Partial Summary Judgment, for Summary Judgment and to Consolidate Case Numbers 81–1932–Civ–SMA and 81–2783–Civ–SMA.

Case number 81–2783–Civ–SMA is a petition suit by the United States of America against Air Florida to enforce the August 24th directive of the Board requesting an alphabetical set of address labels for eligible employee voters. Air Florida filed a Counterclaim and Third Party Complaint against the Board, ALEA, IAM and the Negotiating Committee, which in essence mirrors the Complaint in # 81–1932–Civ–SMA. Air Florida also filed a Motion to Vacate the Court's January 4th Show Cause Order. The Board and the United States of America filed an *ore tenus* Motion to Dismiss the Counterclaim; there is no evidence of service of the Third Party Complaint on any of the Third Party Defendants.

The Court having considered the various motions and memoranda of law in support thereof, the responses thereto, the extensive argument of counsel at a hearing held on January 18, 1982, and the complete record herein, it is

ORDERED AND ADJUDGED as follows:

1. Air Florida's Motion to Consolidate Case No. 81–1932–Civ–SMA and Case No. 81–2783–Civ–SMA be, and the same is, hereby DENIED. Although argued jointly, each case has been considered separately and severally by the Court in its deliberations and at oral argument and it does not appear necessary or appropriate to consolidate in view of the fact that the nature of each case as well as the relief sought therein is different.

2. The United States of America's Petition to Enforce the Directive of the National Mediation Board be, and the same is, hereby GRANTED, and Air Florida's Motion to Vacate the Show Cause Order is DENIED. The Court deems the said Petition to be a subpoena request, *see United*

States v. Feaster, 376 F.2d 147, 149 (5th Cir. 1967), and Air Florida's Answer fails to set forth any basis at law to show why such a request should not be enforced. The request is made pursuant to the statutory authority of the Board under Section 2, Ninth, which specifically grants the Board authority to obtain and utilize such information as may be deemed necessary by it to carry out investigations into employee representational disputes. Furthermore, the demand is not too indefinite and is competent and reasonably relevant to the Board's lawful purposes. *See, United States v. Morton Salt Co.*, 338 U.S. 632, 652–653, 70 S.Ct. 357, 368–69, 94 L.Ed. 401 (1950); *United States v. Feaster*, 376 F.2d 147, 149–150 (5th Cir. 1967) (hereinafter *"Feaster II*).

Accordingly, Air Florida is ORDERED and DIRECTED to produce the requested alphabetical set of employee addresses within twenty-five (25) days herefrom, in Case No. 81–2783–Civ–SMA.**

3. The Board, ALEA and IAM's Motions to Dismiss Air Florida's Complaint in Case No. 81–1932–Civ–SMA be, and the same are, hereby GRANTED. The law is clear that although Congress mandated in Section 2, Ninth, that the Board investigate representational disputes, it left to the Board the task of determining the methods and procedure to be used. *Brotherhood of Railway and Steamship Clerks, etc. v. Ass'n for Benefit of Non-Contract Employees*, 380 U.S. 650, 662, 85 S.Ct. 1192, 1198–99, 14 L.Ed.2d 133 (1965). The Board's investigation of classes or crafts is not required to take any particular form and may be informal, nonadversary and without a hearing. *Id.* The Court finds that the facts stated in Air Florida's verified Complaint, taken as true in this Motion to Dismiss, show an investigation by the Board as to the classes or crafts of Air Florida employees and as to the requisite showing of interest, as evidenced by the Board's receipt and consideration of information offered by Air Florida. *Cf., Brotherhood of Railway and Steamship Clerks, supra*, at 666, 85 S.Ct. at 1200–01.

---

** The January 18th hearing was scheduled as an evidentiary hearing, if needed. No party offered any testimony or evidence. This was also true in the companion case no. 81–1932–Civ–SMA at the said hearing.

Furthermore, Air Florida's suit and claim for relief from the Board request is not ripe for review at this stage of the Board's representational investigation. As the Fifth Circuit stated in *United States v. Feaster,* 410 F.2d 1354, 1364 (5th Cir. 1969) (hereinafter "*Feaster III*"):

> The Mediation Board has investigated the dispute, has found that it has jurisdiction, and has ordered an election. The administrative process, nonetheless, remains incomplete because the election has not been held and the Mediation Board's certificate, which "is the ultimate finding of fact prerequisite to enforcement by the courts," has not been issued. (citations omitted).

Air Florida's Complaint does not come within one of the three special and narrow *Feaster III* exceptions to the preclusion of judicial review of National Mediation Board actions. Taking the allegations in the Complaint in a light most favorable to Air Florida, nevertheless, the Board's actions regarding its investigation of the dispute, including the method and manner of investigation, are not instances of constitutional dimension or gross violation of the Railway Labor Act. *See, Feaster III, supra,* at 1365. Air Florida's allegations do not show that the Board's actions have violated the constitutional rights of Air Florida. *See id.,* at 1366. Likewise, the Board's actions are not infused with error which is of a summa or magna quality. *See id.,* at 1366–68. *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Therefore, Air Florida's allegations are neither ripe for judicial review nor do they confer subject matter jurisdiction on this Court to review the Board's actions. *See, Trans World Airlines v. National Mediation Board,* 107 LRRM 2571 (D.D.C.1981).

■ Additionally, Air Florida lacks standing to challenge the Board's actions. Air Florida is unable to allege any palpable injury in fact suffered as a result of the Board's decision to hold an election. *See, Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). The election may result in rejection of the unions, thus returning Air Florida to its position before the investigation process. Until an election and possible certification, Air Florida's harm is too speculative and minimal to generate standing to challenge the investigation's form and scope. *Trans World Airlines, supra,* at 2578–79. *Intern'l In-Flight Catering Co., Ltd. v. National Mediation Board,* 555 F.2d 712 (9th Cir. 1977), only recognized limited *post-certification* employer standing to challenge the employer having to deal with an unlawfully and improperly certified bargaining representative.

■ Air Florida's allegation that the Board's ex-parte communications with the ALEA concerning their initial application constitutes a violation of the Government in the Sunshine Law, 5 U.S.C. § 552b at § 557(d)(1)(D), is not of such nature as to give rise to the constitutional or gross statutory violation exceptions to the courts' lack of subject matter jurisdiction. Count II of the Complaint does not state a claim for relief.

4. The Board, ALEA and IAM's Motions to Dismiss the Cross-claim of the Negotiating Committee in Case No. 81–1932–Civ–SMA be, and the same are, hereby DENIED. The Negotiating Committee's allegations that the failure of the Board to provide procedural due process to the Negotiating Committee prior to making its determination that the Committee does not constitute a "representative" of employees within the terms of Section 1, Sixth, state a narrow exception to the ban on judicial review. Here too, it appears that the nature and method of investigation to determine the parties entitled to "representative" capacity and/or a place on the ballot should normally be left to the discretion of the National Mediation Board. Nevertheless, upon the bare allegations of the Cross-Claim, the Negotiating Committee argues that the National Mediation Board's ruling in denying it certification and/or a place on the ballot in this regard is "adjudicatory" as to that party and that procedural due process was denied to it, thereby causing its dispute to ripen. Unlike the claims of Air

Florida, the Court cannot say that the Negotiating Committee's assertion that its constitutional rights to due process were violated by the Board's action is "transparently frivolous." *See, Feaster III, supra,* at 1366. The Committee's contention that it has been denied a constitutional right is not so plainly untenable as to permit the granting of these Motions to Dismiss. *See, Fay v. Douds,* 172 F.2d 720, 723 (2nd Cir. 1949). Therefore, the Court must come to the merits of these contentions.

The Court ORDERS and DIRECTS that the Board, ALEA and IAM shall file answers to the Negotiating Committee's Cross-Claim within five (5) days herefrom. It is

FURTHER ORDERED and DIRECTED that the parties to the Cross-Claim shall file Cross-Motions for Summary Judgment within ten (10) days herefrom, so that the Court might bring about an expedited treatment of this matter in accordance with the Congressional intent in enacting Section 2, Ninth. Any party may respond to said Motions for Summary Judgment within five (5) days thereafter.

5. Air Florida's Motion for Partial Summary Judgment in Case No. 81–1932–Civ–SMA be, and the same is, hereby DENIED. Summary judgment procedure is not the appropriate method for making a determination as to the Court's subject matter jurisdiction. In any event, this Motion is moot by reason of this Court's granting of the Motions to Dismiss for lack of subject matter jurisdiction.

6. Air Florida's Motion for Summary Judgment in Case No. 81–1932–Civ–SMA and Case No. 81–2783–Civ–SMA be, and the same are, hereby DENIED AS MOOT in light of the Court's ruling herein in Paragraphs 2 and 3.

## MEMORANDUM OPINION

### Nature of the Action

This action arises from the May, 1981 application of the AIR LINE EMPLOYEES ASSOCIATION ("ALEA") to the NATIONAL MEDIATION BOARD ("NMB" or "Board") for an investigation of a representation dispute involving certain employees of AIR FLORIDA, INC. ("Air Florida"), pursuant to Section 2, Ninth, of the Railway Labor Act, as amended, 45 U.S.C. § 152, Ninth. Subsequent to the ALEA's application, THE INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO ("IAM") filed an application with the NMB to intervene in the dispute. Pursuant to Section 2, Ninth, the Board conducted an investigation of the dispute, the scope and form of which is the subject hereof. As part of its investigative duty and authority and in order to conduct an employee election and certify the proper representative, the NMB, on August 24, 1981, required Air Florida to provide, not later than August 31, 1981, an alphabetical set of employee addresses.

On August 31, 1981, rather than submit the requested employee lists, Air Florida filed this action seeking declaratory, injunctive and equitable relief.[1] Air Florida's Complaint alleges violations of the Board's statutory duty to investigate pursuant to Section 2, Ninth. Specifically, Air Florida alleges that the Board has improperly designated employees into various classes or crafts for the purpose of the representation election, that its employees are already represented by the Negotiating Committee, that the existing representative must be included on the ballot, and that ALEA has failed to make the requisite showing of interest because of the revocation of interest cards by employees. Air Florida also alleges a violation of the Government in the Sunshine Law due to the ALEA's failure to serve it with a copy of ALEA's original application for a representation investigation.

Named as Defendants in the Air Florida suit are the NMB and its individual mem-

1. Case No. 81–1932–Civ–SMA originally was assigned to the division of Judge Alcee Hastings and remained there until transferred to the undersigned Judge by the Chief Judge of this district on December 21, 1981.

bers, ALEA, IAM and THE NEGOTIATING COMMITTEE OF THE AIRPORT AND RAMP SERVICE AGENTS OF AIR FLORIDA, INC. ("Negotiating Committee" or "Committee"), an employee group referred to in agreements with Air Florida concerning certain employees. The Board, ALEA and IAM filed Motions to Dismiss the Complaint alleging absence of subject matter jurisdiction, want of ripeness and lack of standing to judicially review the Board's actions, and asserting that the Complaint failed to state a claim under the Government in the Sunshine Act. The Negotiating Committee filed an Answer, Cross-claim and Counterclaim against the Board, ALEA, IAM and Air Florida. Thereafter, the Board, ALEA and IAM filed Motions to Dismiss the Cross-claim for the same reasons asserted in their Motions to Dismiss the Complaint of Air Florida. Air Florida answered the Counterclaim and also filed Motions for Partial Summary Judgment, for Summary Judgment, and to Consolidate Case Nos. 81–1932–Civ–SMA and 81–2783–Civ–SMA.[2]

### Prior Proceedings

The Court held an extensive hearing on January 18, 1982,[3] on all pending motions in both Case Nos. 81–1932–Civ–SMA and 81–2783–Civ–SMA, and on January 19, 1982, entered an Omnibus Order (docket entry # 77). That Order, reaffirmed and adopted by the Court and incorporated herein by attachment hereto of a copy:

(a) Denied Air Florida's Motion to Consolidate;

(b) Granted the Board, ALEA and IAM's Motions to Dismiss Air Florida's Complaint, finding a sufficient investigation by the Board as to the classes or crafts of Air Florida employees and as to the requisite showing of interest among the employees;

(c) Held that the Complaint did not come within any of the three narrow *United States v. Feaster*, 410 F.2d 1354, 1364 (5th Cir. 1969), *cert. denied*, 396 U.S. 962 [90 S.Ct. 427, 24 L.Ed.2d 426] (1969), exceptions to the preclusion of judicial review of National Mediation Board actions;

(d) Held that the alleged violation of the Government in the Sunshine Law failed to state a claim for relief since it failed to vest subject matter jurisdiction in the Court; and

(e) Denied Air Florida's Motions for Summary Judgment and Partial Summary Judgment.

As to the Cross-claim of the Negotiating Committee, the Court denied the Board, ALEA and IAM's Motions to Dismiss holding that, based on the posture of the case and within the scope of the pending motions to dismiss, the Court could not make a determination as to whether the Negotiating Committee's rights had been violated by the Board's actions. Therefore, the Court ordered answers and cross-motions for summary judgment so that the Court might bring about an expedited treatment of the matter in accordance with the Congressional intent in enacting Section 2, Ninth.

Now pending before the Court are Cross-motions for Summary Judgment filed by the Negotiating Committee, IAM, ALEA and the Board. Also before the Court are Air Florida's Motion for Rehearing on the ruling in the Omnibus Order, IAM's Motion to Enlarge Time to Respond to Interrogatories, the Negotiating Committee's Motion for Default Judgment against ALEA and the Negotiating Committee's Motion for Partial Summary Judgment on its Counterclaim against Air Florida.

---

2. Case No. 81–2783–Civ–SMA is a petition suit by the United States of America against Air Florida to enforce the August 24, 1981 directive of the Board requesting the alphabetical employee address lists. A Final Order in Case No. 81–2783–Civ–SMA has been entered under even date herewith, granting such enforcement.

3. At this hearing, noticed as an evidentiary hearing on any matter properly the subject thereof, no party offered any testimony or evidence. However, as Air Florida correctly notes, the documentation attached to the verified claims was regarded as evidence by virtue of the stipulation of the parties.

The Court has carefully considered the pending motions and, for the reasons herein expressed, concludes that summary judgment should be granted in favor of the Board, IAM and ALEA and against the Negotiating Committee, and that the Counterclaim of the Negotiating Committee against Air Florida should be dismissed. The Court is thus entering herein dispositive rulings in this action in its entirety.

### Undisputed Facts

The facts are evidenced by the extensive exhibits attached to Air Florida's Complaint (docket entry # 1), the Affidavit of Roland K. Quinn, appended to the Board's Renewed Motion to Dismiss, or in the alternative, for Summary Judgment (docket entry # 93), and the Negotiating Committee's Appendix in support of its Motion for Summary Judgment (docket entry # 85). The factual recitations herein are derived from those sources.[4]

On May 19, 1981, the ALEA filed an application with the Board for an investigation of a representation dispute involving the airport and ramp service agents of Air Florida (Complaint, Exhibit A). The application followed Air Florida's separation of its fleets and passenger service employees into two groups: airport and ramp service agents, to which group the application applied, and reservationists. By letter dated May 20, 1981, the Board informed ALEA that prior to docketing, it would be necessary for ALEA to amend its application to specify the generally recognized crafts or classes of: (a) fleet service personnel; and (b) passenger service personnel, including reservationists (Complaint, Exhibits C & T). ALEA promptly amended its application to conform and the application was docketed (Complaint, Exhibit D).

To begin its investigation under Section 2, Ninth, the NMB, on May 28, 1981, contacted Air Florida and requested it to furnish the total number of employees covered by the application, to advise whether they are presently represented, and to provide any other statement the carrier wished to make with respect to the case (Complaint, Exhibit E). On the same day, the NMB also notified Air Florida that a Board representative would be visiting the carrier's office on June 3, to commence investigation and requested Air Florida to have an alphabetical list of potential eligible voters available for the representative (Complaint, Exhibit F). This meeting was postponed upon request of the ALEA but eventually held on June 22, 1981. At this meeting the representative met with representatives of the IAM, Negotiating Committee and Air Florida, but declined the requests of Air Florida and the Negotiating Committee for an evidentiary and/or adversary hearing and limited the scope of the meeting to the presentation of the requested lists (Complaint, ¶ 6P and Exhibit P).

By motion dated June 9, 1981,[5] Air Florida objected to the Board's actions and moved to dismiss the ALEA's application on the grounds, *inter alia*, that ALEA had designated an improper craft for representation purposes, and that ALEA had failed to make a valid and sufficient showing of interest in light of the revocation of interest cards by a number of employees and the existence of another employee representative. Air Florida also requested a hearing on the issues should the Board not summarily dismiss the application (Complaint, Exhibits L, M, P & Q).

On July 22, 1981, the Board issued its ruling (Complaint, Exhibit T), denying Air Florida's appeal and considering and overruling all of Air Florida's objections. Relying on its earlier decisions and its acquired knowledge, the Board held that no craft or class configuration like that urged by Air Florida had been found appropriate and concluded that the purposes of the Railway Labor Act (hereinafter RLA) will be more readily achieved by the identification of the

---

4. There is no claim by any party that any dispute exists as to any material fact although, of course, the parties do disagree as to the inferences to be drawn from those facts.

5. And reiterated in letters dated June 6, June 23 and July 1, 1981.

crafts or classes designated by the Board, not by the carrier (Complaint, Exhibit T).

The Board also ruled that the Air Florida craft employees are presently unrepresented because the Negotiating Committee is not presently a "representative" of these employees. In support of its contention that the Negotiating Committee was not a representative, the Board noted: the Negotiating Committee's lack of a constitution or by-laws; the Committee had not filed reporting and disclosure forms pursuant to the Labor-Management Reporting and Disclosure Act (hereinafter "LMRDA"); the agreements with Air Florida are unilateral, having been signed only by company officials and "witnessed" by employees; the Negotiating Committee had no recognition as an entity under the agreement, is afforded no rights and undertakes no obligations; the grievance procedure in the agreements is geared toward punishing employees rather than toward resolving differences over the interpretation and application of the agreements; no provision is made for dues deductions or union security and there are no union stewards; major medical, group health and dental insurance will continue to be provided under the agreements "to the best of the company's ability;" and the agreements specifically state that if the employees vote to elect a union, the plan becomes null and void and all employees covered shall be removed from the company's cash bonus, profit sharing and new pension plan.

Finally, the Board rejected Air Florida's contentions that there has been an insufficient showing of interest in light of the revocation cards and that only authorization cards dated after the initial ALEA application was filed are valid.

Air Florida filed a Motion to Reconsider the Denial of Appeal on July 29, 1981, which repeated Air Florida's earlier arguments (Complaint, Exhibit U). On August 6, 1981, the Board denied this request for reconsideration noting that "Air Florida's request for reconsideration contains no new arguments of facts which were not previously considered by the Board, and evi-dences mere disagreement with the Board's Denial of Appeal." (Complaint, Exhibit W).

By letter dated July 2, 1981, the law firm of Alley and Alley entered an appearance before the Board as counsel for the Negotiating Committee. (Quinn Affidavit, Exhibit 1). The Board, by letter dated July 7, 1981, requested the Negotiating Committee to provide information to support its status as an employee representative, including its latest filings in accordance with LMRDA, its constitution and by-laws, a list of officers, copies of all collective bargaining agreements, and any other statements which it cared to make in regard to the pending applications. (Quinn Affidavit, Exhibit 2).

On July 15, 1981, the Negotiating Committee replied by submitting two letters. First, it requested until July 22nd to submit information regarding its status as the employee-representative (Quinn Affidavit, Exhibit 4). Second, in a separate letter, it set forth its understanding of the events that had thus far occurred in the investigation, agreed with Air Florida's prior objections concerning the craft and class designations and the lack of sufficient authorization cards, and requested a hearing. (Quinn Affidavit, Exhibit 3).

By letter dated July 20, 1981, the Negotiating Committee submitted its statement concerning its status as the existing employee representative. In that regard, the Negotiating Committee maintained that it had no obligation to comply with the filing requirements of the LMRDA and failed to furnish copies of either its constitution or by-laws, although it did provide a copy of the "Rules and Pay Plan of Air Florida and the Ramp Service Agents". The Committee further contended that the Board was in default of its statutory obligation to investigate and certify the representative within thirty days and requested a full hearing on all the issues, including the appropriate employee representative. (Quinn Affidavit, Exhibit 5).

On August 4, 1981, in response to the Board's Denial of Air Florida's Appeal, the

Negotiating Committee moved for an extension of time to appeal the Board's decision. (Complaint, Exhibit U). The NMB, on August 7, denied the motion on the ground that the Negotiating Committee was not a party to the action and not an employee representative within the meaning of the RLA. (Complaint, Exhibit X). Nevertheless, the NMB encouraged the Negotiating Committee to submit any information it felt was relevant, although noting that the Board was not bound to consider or respond thereto.

On August 14, 1981, the Negotiating Committee submitted a Motion for Reconsideration of the Denial of the Air Florida Appeal and Denial of Request for Reconsideration, or, In the Alternative, a Motion to Dismiss the ALEA, or, In the Alternative, For a Hearing. In this Motion, the Negotiating Committee restated Air Florida's and its earlier objections to the Board's craft and class designations and put forth its argument in support of the Committee's status as the employee representative. (Complaint, Exhibit AA).

On August 24, 1981, the Board informed Air Florida that it had decided that in order to resolve the representation dispute among the fleet service and passenger service employees, it would conduct an all-mail, secret ballot election. Accordingly, it ordered Air Florida to provide, not later than August 31, 1981, an alphabetical set of employee address labels or a computer tape containing such information. (Complaint, Exhibit CC).

The next day, in response to the Negotiating Committee's August 14 Motion, the NMB issued a decision denying the Committee's Motion. (Complaint, Exhibit EE). In that decision, the Board considered and re-

sponded to each of the Negotiating Committee's assertions including, *inter alia* : that it is a representative within the meaning of the RLA and need not comply with the LMRDA; that the Board must accept revocation of authorizations if it accepts authorization cards and; the arguments with respect to the proper crafts or classes.

On August 30, 1981, Air Florida notified the Board of its unwillingness to comply with the Board's directive to supply the employee lists and on August 31, 1981, instituted the above-styled action.[6]

### Air Florida's Motion for Rehearing

Air Florida's Motion for Rehearing under Rule 59, Fed.R.Civ.P., asserts that the facts and the law dictate that the Court reconsider its January 19, 1982 Omnibus Order. Air Florida asks the Court to stay or set aside the requirement that Air Florida provide the election list, to assert jurisdiction to determine whether the thirty-day investigation statutory requirement precludes any election, and to order the Board to investigate in a good faith manner by continuing judicial jurisdiction.

The Court has considered all of Air Florida's contentions and is compelled to deny its Motion for Rehearing, hereby adopting and reaffirming its January 19, 1982 Order (attached hereto), with the following *additions* :

1. Air Florida contends that since it alleges, *inter alia*, standing, ripeness, subject matter jurisdiction and failure to investigate and follow the duty required by 45 U.S.C. § 152, Ninth, the Court is precluded, under the applicable standards of review, from granting a motion to dismiss. Although on a motion to dismiss the well

---

**6.** Subsequent to the January 18, 1982 hearing, by an exchange of correspondence, copies of which were filed by the NMB and are in the Court record, the Board afforded the Negotiating Committee another opportunity to present any additional evidence and/or argument which it believed the Board should consider in support of its claim of representative status under the RLA. (Quinn Affidavit, Exhibit 12). The Negotiating Committee responded by reiterating its earlier position that it was not sub-

ject to the LMRDA requirements and that an evidentiary hearing should be held. (Quinn Affidavit, Exhibit 14). The Board once again considered the Negotiating Committee's comments and arguments and restated its earlier ruling that compliance with LMRDA is a pre-condition to being a recognized representative under the RLA, and that the proper showing of employee interest had been evidenced by the ALEA. (Quinn Affidavit, Exhibit 15).

pleaded allegations of fact are taken as true, the Court need not accept conclusions of law or sweeping legal conclusions cast in the form of factual allegations. *See, Assoc. Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974);[7] Wright & Miller, Fed. Practice and Procedure, § 1357; Moore, Fed. Practice, ¶ 12.08. Air Florida's allegations of standing, ripeness, subject matter jurisdiction and failure to comply with Section 2, Ninth, are legal conclusions to be drawn by the court, not by the parties. Accordingly, the Court concludes that as to the claims of Air Florida, the Board has complied with its Section 2, Ninth, duty and, moreover, Counts I, III and IV do not state any of the three narrow *United States v. Feaster*, 410 F.2d 1354 (5th Cir. 1969) (hereinafter "*Feaster* III"), *cert. denied*, 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426 (1969), exceptions to the preclusion of judicial review of National Mediation Board actions.

2. Air Florida alleges in Count II of its Complaint that the ALEA's failure to serve it with a copy of the original application for a representative investigation constituted "a violation of the Government in the Sunshine Law, 5 U.S.C. § 552b, at § 557(d)(1)(D) by the National Mediation Board."[8] Air Florida argues that the Government in the Sunshine Act grants statutory standing and, therefore, Count II does not have to meet the narrow exceptions to judicial review of NMB decisions. The Court readopts its earlier reasoning that because, in effect, this claim asks the Court to intervene in the Board's RLA decisions, it should be required to state a *Feaster III* exception to the Court's lack of subject matter jurisdiction. Alternatively, § 557 specifically states that it applies only when a hearing is required in accordance with § 556 of Title 5. Section 556 applies, according to the language of that section, to hearings required by § 553 (rulemaking) or § 554 (adjudicatory actions). Thus, by its

terms, and contrary to Air Florida's allegations, § 557 does not apply to § 552. Accordingly, Count II, the Government in the Sunshine Law claim, fails to state a claim for relief.

3. The failure of the NMB to certify the names of the employee representatives within thirty days after receipt of the invocation of its services under Section 2, Ninth, does not invalidate the Board's investigation and subpoena request, nor does it state an exception to the bar to judicial review of NMB action. The time provision has been held to be directory rather than mandatory. *Systems Fed'n No. 40, Ry. Employees Dept. v. Virginian Ry. Co.*, 11 F.Supp. 621, 627 (E.D.Va.1935), *aff'd*, 84 F.2d 641 (4th Cir. 1936), *aff'd*, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). In the instant case, there is no evidence that the delay was attributable to any lack of diligence on the part of the Board. Indeed, the parties herein who are complaining of the delay, Air Florida and the Negotiating Committee, filed lengthy motions with the Board to dismiss the application and additional motions to reconsider the denial of the motions to dismiss. These motions required time for consideration and extensive orders, thus contributing to any delay of the investigation by the Board.

*Cross-Motions for Summary Judgment Addressed to the Negotiating Committee's Cross-Claim*

In the January 19th Omnibus Order, the Court denied the Board, ALEA and IAM's Motions to Dismiss the Negotiating Committee's Cross-claim holding that under the limited scope of inquiry and deference accorded the non-moving party, the Court could not say as a matter of law that the Negotiating Committee's assertions do not fall within any of the exceptions to the general rule of jurisdictional claustration stated in *Feaster III*. The parties have

---

7. Decisions of the Fifth Circuit, as that Court existed on September 30, 1981, are binding as precedent in the Eleventh Circuit and upon this court. *Bonner v. City of Prichard*, 661 F.2d 1206, (11th Cir. 1981).

8. Air Florida has in fact been given these documents pursuant to a Freedom of Information Act request, 5 U.S.C. § 552, and therefore is not seeking any document to which it has been denied access.

accordingly filed cross-motions for summary judgment which are dispositive of the Negotiating Committee's cross-claims. These motions submit additional documentary evidence for the Court's consideration and raise further legal arguments on the issue of a due process violation or gross violation of the RLA by the Board's denial of representative status to the Negotiating Committee.

The Negotiating Committee contends that the Court has the jurisdiction and power under *Feaster III* to strike down the National Mediation Board's actions in refusing to investigate and denying them representative status. It asserts that there is a substantial showing that the Board violated the Negotiating Committee's constitutional right to due process, thus stating a *Fay v. Douds*, 172 F.2d 720 (2nd Cir. 1949) and *Feaster III* exception permitting judicial intervention. Also, the Negotiating Committee argues that the Board's requirement that a representative, as defined by the RLA, must comply with the reporting and disclosure requirements of the LMRDA, is plainly in excess of its power and contrary to specific federal law. Thus, the Negotiating Committee submits that its claim falls within the exception developed in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) and recognized in *Feaster III, supra*, 410 F.2d at 1366–68.

■ Specifically, the Negotiating Committee alleges that the failure to provide an evidentiary hearing and concomitant failure to investigate properly, with the consequent denial of representative status, resulted in a violation of its due process rights. In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that the fundamental requisite of due process of law is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* at 267, 90 S.Ct. at 1020. However, as the Court's decisions in *Goldberg* and *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) made clear, that hearing need not be an oral hearing. Particularly in the matter of representation disputes under the RLA, the Board's duty

under Section 2, Ninth, and the requirements of due process of law, merely dictates such investigation as the nature of the case demands. *Brotherhood of Railway and Steamship Clerks, etc. v. Ass'n for Benefit of Non-Contract Employees*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965). Although Congress mandated in Section 2, Ninth, that the Board investigate representation disputes, it left to the Board the task of determining the methods and procedures to be used. *Id.* at 662, 85 S.Ct. at 1198. "An investigation is essentially informal, not adversary; it is not required to take any particular form." *Id.* Thus, the full panoply of judicial procedure need not be used. *Feaster III, supra*, 410 F.2d at 1366.

The facts of the instant case are similar to the facts before the Supreme Court in *Brotherhood of Railway and Steamship Clerks, supra*. In that case, as in the case *sub judice*, the carrier asserted that the Board should hold a hearing to determine the appropriate craft or class in which the election should be held. *Id.* at 653, 85 S.Ct. at 1194. In holding that the Board performed its statutory duty to investigate in a manner satisfying any possible constitutional requirements, the Supreme Court noted that the Board had reviewed the application of the union and reviewed and considered statements of the carrier and the opposing union. The Court concluded that viewed alongside the Board's prior experience with groupings in the air transport industry, the procedure clearly complied with the statutory command that the Board investigate the dispute. *Id.* at 666, 85 S.Ct. at 1201. As the Court stated, "the Act does not require a hearing when the Board itself designates those who may participate in the election." *Id.; see, U. S. v. Feaster*, 376 F.2d 147, 150 fn. 3 (5th Cir. 1967), *cert. denied*, 389 U.S. 920, 88 S.Ct. 237, 19 L.Ed.2d 265 (1967).

■ The unassailable facts cited herein illustrate that, despite the adverse decision of the Board as to its representative status, the Negotiating Committee was given the opportunity to present any and all material information to the Board which would substantiate its contentions. On both July 7,

1981 and January 19, 1982, the Board requested the Negotiating Committee to furnish any information whatsoever which would support its claim that it is a representative of certain Air Florida employees. Indeed, the Negotiating Committee took advantage of these requests and submitted arguments and information which was used by the Board in making its determinations. The Negotiating Committee's suggestion that these Board efforts were merely "repair carpentry" and "*post hoc* rationalization" rather than good faith, open attempts to receive and consider the Negotiating Committee's position is not persuasive.

The Board's procedure comported with its statutory duty and the requirements of due process of law. Consequently, the Negotiating Committee's argument that the Board failed to investigate, and therefore denied it due process of law, does not present a constitutional violation nor allow this Court to review the NMB's decisions. *See, Brotherhood of Railway and Steamship Clerks, supra*, 380 U.S. at 668, 85 S.Ct. at 1201; *Feaster III, supra*, 410 F.2d 1366.

Alternatively, the Negotiating Committee alleges that this Court has jurisdiction because the Board acted in excess of its power and contrary to specific federal law, thereby depriving it of a right assured by Congress under the RLA. *See Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Feaster III, supra*, 410 F.2d at 1366–68.

Section 2, Ninth, 45 U.S.C. § 152, Ninth, of the Railway Labor Act provides in pertinent part:

> If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to rep-

resent the employees involved in the dispute, and certify the same to the carrier.

"Representative" is defined in Section 1, Sixth, 45 U.S.C. § 151, Sixth, as "any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them." Accordingly, the Negotiating Committee asserts that they are "any person or persons" and as such are a "representative."

The National Mediation Board, in its July 22 and August 25, 1981 orders, reviewed the agreements between the Negotiating Committee and Air Florida and found that they do not conform to generally recognized labor relations practices in several respects. The Board held that the Negotiating Committee was not presently a "representative" because it has not qualified by preparing a constitution and by-laws and has not filed the required reporting and disclosure forms pursuant to the Labor Management Reporting and Disclosure Act. The NMB stated that the Negotiating Committee was a labor organization and was subject to the requirements imposed on all labor organizations by the LMRDA. The Board argued that due to its obligation to ensure that only bona fide representatives are certified to represent employees under the RLA, it had a duty to screen out company-dominated unions or other organizations which do not conform to the democratic standards required of labor representatives, thus justifying its policy requiring compliance with the LMRDA.

The Negotiating Committee asserts that the Board's requirement that it comply with the LMRDA, is in excess of its power and contrary to specific federal law. The LMRDA, 29 U.S.C. § 523(b), provides:

> Nothing contained in this chapter and section 186(a-c) of this title shall be construed to supersede or impair or otherwise affect the provisions of the Railway Labor Act, as amended, or any of the obligations, rights, benefits, privileges, or immunities of any carrier, employee, organization, representative, or person subject thereto; nor shall anything con-

tained in this chapter be construed to confer any rights, privileges, immunities, or defenses upon employers, or to impair or otherwise affect the rights of any person under the National Labor Relations Act, as amended.

Here, the Negotiating Committee argues, the attempt of the Board to require that the Negotiating Committee be in current compliance with the LMRDA is plainly contrary to the explicit prohibition of the LMRDA, as well as contrary to established national labor policy and Congressional intent in enacting the LMRDA.

■ The *Leedom v. Kyne, supra,* exception to the general rule of judicial claustration concerning representation disputes under the RLA, does not provide for review of a decision of the Board made within its jurisdiction. Rather, it applies only when the Board has rendered an order made "in excess of its delegated powers and contrary to a *specific prohibition in the Act.*" *Brotherhood of Railway and Steamship Clerks, supra,* 380 U.S. at 659–660, 85 S.Ct. at 1197. "Under this exception access to the courts is accorded only if the Mediation Board's determination is infused with error which is of a *summa* or *magna* quality as contraposed to decisions which are simply *cum* error." *Feaster III, supra,* 410 F.2d at 1368.

In *International Brotherhood of Teamsters v. Brotherhood of Railway Airline & Steamship Clerks,* 402 F.2d 196, 205 (D.C. Cir.1968), *cert. denied,* 393 U.S. 848, 89 S.Ct. 135, 21 L.Ed.2d 119 (1968), the Court discussed the *Leedom* exception:

> The narrow exceptions to the "jurisdictional" bar created by Leedom v. Kyne, and similar cases must be instances of constitutional dimension or gross violation of the statute. . . . The retention of the doctrine negativing jurisdiction to consider the merits serves to confine the assertion of jurisdiction to cases where the error on the merits is as obvious on the face of the papers as the violation of specific statutory language, without extension to "arguing in terms of policy and broad generalities as to what the Railway Labor Act should provide."

Therefore, *Leedom* represents a narrow and rarely invoked exception. *Feaster III, supra,* 410 F.2d at 1368. In *Leedom,* the exception was permitted because the inclusion of both professional and non-professional employees was expressly contrary to the language of the Act. The Supreme Court has cautioned against any extension of the narrow exception:

> The Kyne exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law.

*Boire v. Greyhound,* 376 U.S. 473, 481, 84 S.Ct. 894, 899, 11 L.Ed.2d 849 (1964).

■ In the instant case, the NMB's decision that the Negotiating Committee was not a representative under Section 1, Sixth, of the RLA is clearly not a *magna* or *summa* violation warranting judicial intrusion. The Board's decision is not in excess of any statutory prohibition or mandate, nor is it in disregard of a clear, specific statutory directive of the RLA. Section 2, Ninth, of the RLA specifically imposes a duty upon the Board to resolve all representation disputes. The Board is further directed to do so "in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier." Moreover, Section 2, Ninth, specifically states that "[i]n the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election . . . ."

In imposing this duty, Congress mandated only that the Board investigate the dispute, leaving to the Board the task of selecting the methods and procedures to be used in each particular case.

> It leaves the details to the broad discretion of the Board with only the *caveat* that it "insure" freedom from carrier interference. That the details of selecting

representatives were to be left for the final determination of the Board is buttressed by legislative history clearly indicating as much. (citations omitted).

*Brotherhood of Railway and Steamship Clerks, supra*, 380 U.S. at 668–669, 85 S.Ct. at 1201–02.

While Section 1, Sixth, of the RLA, 45 U.S.C. § 151, Sixth, defines the term "representative", that section creates no affirmative duty or prohibition. A determination as to the status of a representative is part and parcel of the Board's duty to investigate representation disputes. Section 2, Ninth, specifically grants the Board such authority to "designate who may participate in the election and establish the rules to govern the election." Since the Act itself does not specifically define the terms "labor union organization", the Court is unable to perceive any specific prohibition or provision in the RLA which the Board violated by finding the Negotiating Committee not to be a representative within the meaning of the Act, and hence not a party to the election.[9]

 The Negotiating Committee appears to argue in its motion for summary judgment that the express statutory provision which was exceeded by the Board was 29 U.S.C. § 523(b) of the Labor Management Reporting and Disclosure Act—not the Railway Labor Act. However, as stated by the Supreme Court in *Leedom v. Kyne, supra*, 358 U.S. at 188, 79 S.Ct. at 183, and reemphasized in *Brotherhood of Railway & Steamship Clerks, supra*, 380 U.S. at 659–660, 85 S.Ct. at 1197–98, the excess of the NMB's power must be contrary to a specific provision in the statute which is the source of its power and under which it is operating, not in excess of just any statute. Therefore, the Negotiating

Committee's argument misstates the *Leedom* exception since the Board's act must be contrary to a specific provision of the RLA, which it clearly is not.

Thus, as part of its duty to investigate representation disputes and determine the proper parties to an election, the Board made a discretionary decision concerning the status of the Negotiating Committee. It did so in light of the information supplied by the Negotiating Committee, the statutory objectives of the Railway Labor Act and its expertise in the field. At worst, even if *arguendo* the Board erred, its determination of the representation status of the Negotiating Committee was merely "an erroneous assessment of the particular facts before the Board [which] has led it to a conclusion which does not comport with the law." *Boire, supra*, 376 U.S. at 481, 84 S.Ct. at 899. While the Negotiating Committee may disagree with the decision rendered by the NMB, that decision is within the Board's authority under Section 2, Ninth, of the RLA and, as such, it is not reviewable by this Court as a gross violation of the Act.[10] Thus, the Negotiating Committee's Cross-claim does not state either a *Fay v. Douds, Leedom v. Kyne,* or *Feaster III* exception to the preclusion of judicial review of Board decisions.

### The Negotiating Committee's Motion for Partial Summary Judgment upon its Counter-claim against Air Florida

The Negotiating Committee has also moved for Partial Summary Judgment upon its Counterclaim against Air Florida. The Negotiating Committee contends in this counterclaim that Air Florida has illegally withheld contractually required pay increases due February 1, 1982, and refused to bargain with regard to certain items in the Rules and Pay Plan of Air Florida and

---

9. At the January 19, 1981 hearing, the Negotiating Committee stated that it does not want the requested representation election and does not wish to be placed on the ballot. The Committee maintains that its existing representational status should be recognized, thus precluding any election due to the greater showing of employee interest required. (Transcript, p. 70).

10. As discussed above, the failure of the NMB to certify the name of the employee representative within thirty days after receipt of the invocation of its services under Section 2, Ninth, does not invalidate the Board's investigation nor does it state an exception to the bar to judicial review of Board action.

the Airport and Ramp Service Agents in the Service of Air Florida. Air Florida's position is that it is merely seeking to avoid altering the *status quo* until the representation issue is resolved by the Court or the National Mediation Board.

■ As previously stated, judicial consideration of railway labor disputes is rare, particularly in representation disputes where the National Mediation Board has exclusive jurisdiction. *See, Switchmen's Union of North America v. Nat'l Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943). Although courts have jurisdiction to settle a dispute which poses a genuine issue as to the validity of a collective bargaining agreement and not merely its interpretation, "district courts have no given authority where 'validity' of the contract depends upon the merits of the representation dispute." *Brotherhood of Locomotive Firemen & Engineers*, 413 F.2d 19 (5th Cir. 1969), *cert. denied*, 396 U.S. 963, 90 S.Ct. 432, 24 L.Ed.2d 426 (1969), quoting *Division No. 14, Order of R. R. Telegraphers v. Leighty*, 298 F.2d 17, 20 (4th Cir. 1962), *cert. denied*, 369 U.S. 885, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962).

■ Looking through form to substance, although the Negotiating Committee's Counterclaim against Air Florida is cast in the form of an action in contract, it in fact involves the same employee representation issues now before the Board for determination. As the Supreme Court stated in *General Committee of Adjustment v. Missouri K. T. R. Co.*, 320 U.S. 323, 336–37, 64 S.Ct. 146, 152–53, 88 L.Ed. 76 (1943):

> In view of the pattern of this legislation and its history the command of the Act should be explicit and the purpose to afford a judicial remedy plain before an obligation enforcible in the courts should be implied. Unless that test is met the assumption must be that Congress fashioned a remedy available only in other tribunals. There may be as a result many areas in this field where neither the administrative nor the judicial function can be utilized. But that is only to be expected where Congress still places such

great reliance on the voluntary process of conciliation, mediation and arbitration. See H.Rep.No. 1944, 73d Cong., 2d Sess., p. 2. Courts should not rush in where Congress has not chosen to tread.

It is inescapable that district courts have no jurisdiction where the "validity" of the contract and its obligations, as in the case *sub judice*, depends upon the merits of a representation dispute. *Division No. 14, Order of R. R. Telegraphers v. Leighty*, 298 F.2d 17, 20 (4th Cir. 1962), *cert. denied*, 369 U.S. 885, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962).

Alternatively, if the Negotiating Committee's counterclaim is viewed as asking the Court to construe or interpret the meaning or application of a particular provision of its alleged agreement with reference to a specific situation, then the quarrel between the parties is a minor dispute. *See, Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). Such minor disputes fall within the exclusive jurisdiction of the National Railroad Adjustment Board pursuant to 45 U.S.C. § 153. *Slocum v. Delaware L. & W. R. R. Co.*, 339 U.S. 239, 244, 70 S.Ct. 577, 580, 94 L.Ed. 795 (1950). Therefore, under such circumstances this Court is without authority to interpret the terms of the agreements and determine whether Air Florida's actions are in lawful compliance with the agreements.

Furthermore, the Rules and Pay Plan states in Article III that if the employee representative and the company cannot reach an agreement as to the interpretation of the Plan, then the matter shall be dealt with in accordance with the arbitration procedure of Article XXII of the Rules and Pay Plan. Hence, this dispute remains subject to the voluntary processes of conciliation, mediation and arbitration.

### The Negotiating Committee's Motion for Default Judgment against ALEA

The Negotiating Committee has moved for default judgment against the ALEA pursuant to Rule 55, Fed.R.Civ.P., for failure to file an answer to its Cross-claim and failure to comply with the Court's January

19 Order requiring an answer within five days therefrom. The ALEA has subsequently filed an Answer and, accordingly, this Court refuses to enter a default. *See,* Wright & Miller, Fed. Practice and Procedure, § 2682 at 255–56.

The Court having considered the pending motions of the parties and the extensive memoranda of law in support thereof, the responses thereto, the applicable law and the entire record herein, it is accordingly

ORDERED AND ADJUDGED as follows:

1. AIR FLORIDA'S Motion for Rehearing on the Court's ruling in its January 19, 1982 Omnibus Order is hereby DENIED.

2. The NATIONAL MEDIATION BOARD, IAM and ALEA'S Motions for Summary Judgment on THE NEGOTIATING COMMITTEE'S Cross-claim are hereby GRANTED, and THE NEGOTIATING COMMITTEE'S Motion for Summary Judgment on its Cross-claim is hereby DENIED.

3. THE NEGOTIATING COMMITTEE'S Motion for Partial Summary Judgment on its Counterclaim is DENIED and the Counterclaim is hereby DISMISSED.

4. THE NEGOTIATING COMMITTEE'S Motion for Default Judgment on its Cross-claim against the ALEA is hereby DENIED.

5. IAM'S Motion for Enlargement of Time to Respond to THE NEGOTIATING COMMITTEE'S Interrogatories is hereby DENIED AS MOOT.

A Final Judgment is entered in accordance herein under even date herewith.